**FIRST NATIONAL BANK OF ATLANTA, Texas, Appellant,**

v.

**Billy HARGROVE, Appellee.**

**No. 8192.**

Court of Civil Appeals of Texas, Texarkana.

Dec. 31, 1973.

Richard E. Green, Touchstone, Bernays & Johnston, Dallas, for appellant.

Jack Carter, Newman & Carter, Texarkana, Ark., for appellee.

CHADICK, Chief Justice.

This suit was brought by First National Bank of Atlanta, Texas, against Billy Hargrove to recover $1,010.98, together with attorney fees of $151.65, interest, costs and other proper relief. The action sought recovery on the basis of the unpaid balance, as well as interest cost and attorney fees,

accruing as a result of default in payment of three separate promissory notes executed respectively by Eddie M. Hall, Anna E. Jones and Eliza Bell. Hargrove allegedly indorsed and sold such notes to the bank. By crossaction, Hargrove sued to recover $9,090.49 from the bank. Details of the pleadings by both parties will be given as occasion arises therefor. A nonjury trial was held and judgment was entered that the bank take nothing and that Hargrove recover $4,112.56, costs, etc. The bank appealed.

## MOTION TO STRIKE

Appellee Hargrove filed a motion to strike from the appeal record the statement of facts tendered for filing by the bank. Final judgment was rendered in the trial court on March 21, 1973. By timely motion and order the time for filing a statement of facts in the appeal was enlarged to include the 20th day of June, 1973; on this, the last mentioned date, by similar motion and order, time for filing the statement of facts was again enlarged and extended to include June 25, 1973. The document was not filed on or before June 25, but to the contrary, seven days thereafter, on July 2, 1973, the bank presented a statement of facts, together with a third motion to enlarge filing time, and moved this court to allow the statement of facts to be filed. Good cause for failure to file the statement of facts existed throughout the entire period prior to the actual tender of the document. This court is confronted with the problem of allowance or rejection of a statement of facts tendered after the time for filing, as theretofore extended, has expired.

The conclusion is reached that Western United Realty Co. v. Shaw, 356 S.W.2d 205 (Tex.Civ.App.Eastland 1962, writ ref'd) is decisive of the issue presented by the motion to strike. In *Western United,* time for filing a statement of facts was extended to include October 15, 1961, but was not filed on or before such date. But after the enlarged time theretofore granted had expired, on October 17, 1973, the statement of facts was tendered for filing. In addressing the problem, Chief Justice Grissom said, "Appellant filed its original motion for extension of time within the time prescribed by Rules of Civil Procedure, rule 386. We, therefore, had jurisdiction to grant appellant's last motion for extension of time to file the statement of facts. Parks v. Purnell, 135 Tex. 182, 141 S.W.2d 585; Hodges et al. v. Nix, Tex.Civ.App., 225 S.W.2d 576 (Ref. N.R. E.)." The writ action indicates the Supreme Court considered Chief Justice Grissom's quote an accurate statement of the law and the court's action a proper construction of Texas Rules of Civil Procedure, rule 386. This court has authority to allow the statement of facts to be filed under the circumstances shown. Appellees' motion to strike the statement of facts is overruled.

## CASE ON MERITS

In accord with previous arrangements made with the bank, Hargrove purchased automobiles and issued drafts on the bank in payment. The bank honored the drafts and kept the automobile title certificates but the purchased vehicles were put on display for sale at Hargrove's used car lot. Hargrove, using the Eliza Bell transaction as an example of his operational procedure, testified that when customer Bell came on his lot and agreed to purchase an automobile, he took a credit statement from her, checked her credit, received a down payment, and then carried the deal to the bank and the bank "purchased the paper." The Bell note instrument, as well as the other two note instruments in suit, was admitted as an exhibit. The Bell note (as were the others) was prepared by using a printed form with spaces to be filled showing date, total amount, and the number and amount of monthly payments, with a blank line for the maker's address and signature. The note form had as payee, "THE FIRST NATIONAL BANK, ATLANTA, TEXAS," printed therein in the most prominent lettering used in the instrument.

Hargrove's signature is written across the back or reverse side of the executed Bell note, as well as the other two.

■ The evidence supports the trial judge's implied conclusion that the bank had the title certificate to the car in the Bell transaction (as well as in the others), in its possession. Hargrove had possession of the car and sold it to Bell. The promissory note payable to the bank was signed by Bell, as maker. This note was delivered to Hargrove and he in turn sold and delivered the note to the bank. As a part of the transaction with the bank, Hargrove placed his signature on the reverse side of the note. The written content of the note instrument does not show Hargrove to be a party to the contract the note instrument evidences. Nevertheless, Hargrove's signature on the back of the Bell note, as well as on the others, constituted an indorsement of the note. Tex.Bus. & Commerce Code, Sec. 3.402.

■ An indorser's obligation is governed by Tex.Bus. & Commerce Code, Secs. 3.414, 3.415 and 34.02 V.T.C.A. In this instance, as mentioned, Hargrove's indorsement is not in the chain of title, therefore, since he is a stranger to the note contract, his indorsement is an anomalous or irregular indorsement and is of a character recognized by Tex.Bus. & Commerce Code, Sec. 3.415(a) as an accommodation indorsement. The bank took the Bell, as well as the other notes, with notice that Hargrove was an accommodation indorser. Tex.Bus. & Commerce Code, Sec. 3.415(d). As an accommodation indorser, Hargrove's liability was that of a surety. 53 T.J.2d Suretyship, Secs. 1, 2, and 6; Tex.Bus. & Commerce Code, Sec. 3.415, Comment 1; see also, Clark, Suretyship in the Uniform Commercial Code, 46 Tex.L.Rev. 453. As a surety, Hargrove had such defenses to liability on the notes as are afforded by Tex.Bus. & Commerce Code, Secs. 3.606

and 34.02. The last mentioned code section is in this language:

"(a) When a right of action has accrued on a contract for the payment of money or performance of an act, a surety on the contract may require by written notice that the obligee forthwith sue on the contract.

(b) A surety who gives notice to an obligee under Subsection (a) of this section is discharged from all liability on the contract if the obligee (1) is not under legal disability; and either (2) fails to sue on the contract during the first term of court after receiving the notice, or during the second term showing good cause for the delay; or (3) fails to prosecute the suit to judgment and execution."

This is a statutory adaptation of the doctrine of Pain v. Packard.*

■■ The record shows that Hargrove first became aware that the three notes in suit were delinquent when he was served with citation in this case. He promptly notified the bank's attorney in writing, demanding that it pursue its remedies against the principals and sue if necessary on the notes. Such action was not taken and the bank undertakes to excuse failure on the ground that notice to its legal counsel was not under the circumstances, notice to it. In support of this contention the bank cites Lynch v. McKee, 214 S.W. 484 (Tex.Civ. App.Dallas 1919, err. dism'd), and insists that notice to its former legal counsel is not notice to the bank. The record shows that former counsel for the bank instituted the suit. Such counsel was directed by the bank to deliver the bank file to present counsel and was thereafter granted leave by the court to withdraw from the case. No renunciation of employment is shown to have been made by former counsel before he was relieved of the file. Abandonment of the agency relationship between

* 13 Johns. 174; 7 Am.Dec. 369 (N.Y.1816). See Clark, Suretyship in the Uniform Commercial Code, 46 Tex.L.Rev. 453.

the bank and former counsel is not shown. Prosecution of the suit instituted by former counsel was continued and the bank accepted all benefits of former counsel's activities in its behalf. The rule is stated in 2 T.J.2d Agency, Sec. 197, that: "* * * where an agent is the actor representing his principal in the transaction to which the agent's knowledge relates, the principal will not be permitted to avail himself of the benefits of the agent's services without, at the same time, being charged with the agent's knowledge." The bank had notice. Wellington Oil Co. of Delaware v. Maffi, 136 Tex. 201, 150 S.W.2d 60 (1941, opin. adpt.).

In his cross-action, Hargrove plead the existence of a reserve account and an agreement with the bank, alleging, "* * * It was specifically agreed by Billy Hargrove and the Cross-Defendant by and through its president and agent, C. B. Dukes, that said reserve account would be used only in the event that the maker of a note, which was financed by the First National Bank of Atlanta, Texas, and which was sold by Billy Hargrove had defaulted. In such event [default in car note payment] Billy Hargrove was to have been given notice of such default and an opportunity to repurchase the automobile and resell it paying the proceeds to the First National Bank of Atlanta, Texas, on notes for which Billy Hargrove was legally liable. It was further specifically agreed by Billy Hargrove and the Cross-Defendant that if the proceeds of such sale of a repossessed automobile were not sufficient to completely extinguish the debt due and owing to the Cross-Defendant then in that event only could money be withdrawn from said reserve account to cover such losses to the bank" (bracketed words supplied). Additionally, Hargrove plead no losses were sustained by the bank and no occasion arose for withdrawals from the reserve account and that he authorized no one to make withdrawals or transfers from such account. Alternatively, Hargrove plead deposits to the account were to be held in trust and used only as specified in the agreement and that the bank violated its trust and converted his deposits.

The trial court's implied finding that the bank wrongfully misapplied funds held in Hargrove's reserve account is questioned by the bank on the grounds that there is no evidence thereof or that the evidence is insufficient to support the finding, or alternately, the finding is contrary to the evidence's great weight and preponderance. Hargrove and the bank's former President, C. B. Dukes, testified that there was an agreement made and entered into by them substantially as alleged by Hargrove. Initially, Hargrove deposited $1,000.00 cash to open the reserve account. A percentage of the interest charged on each car sale financed by the bank was to be deposited in the reserve account. Both testified that withdrawals from the account were to be made only when a note secured by an automobile sold by Hargrove and financed by the bank became delinquent. At such time the vehicle would be repossessed and placed on the Hargrove car lot for resale. When resold, the amount of the original note would be paid. If Hargrove did not resell the vehicle for a sufficient amount to completely extinguish the original note, the balance would be taken from the reserve account or Hargrove could pay from his own resources. Funds could only be withdrawn from the account in accordance with the agreement.

When a bank accepts an instruction to apply a deposit in a particular way, it lacks authority to apply it in a different way. 8 T.J.2d Banks, Sec. 222. Hargrove testified that after the bank ceased financing his sale of automobiles in the Spring of 1967, it breached its obligation to return the delinquent note vehicles back to his lot for resale and instead sold the vehicles and charged the difference to his account. This was not disputed. There is evidence to support Hargrove's pleading that he had an agreement with the bank that money was not to be withdrawn from the account

except in accordance with the reserve account agreement and that the bank breached the agreement.

The points of error have been examined and reversible error is not found. The judgment of the trial court is affirmed.